UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------- x
NANCY NIEVES,                                           :
                                                        :
                    Plaintiff,                          :
                                                        :    FIRST AMENDED COMPLAINT
          -against-                                     :
                                                        :
CITY OF NEW YORK, Police Officer                        :
ALEJANDRO MONTALVO, Shield No. 16521,                   :    Jury Trial Demanded
Police Officer FELICIA ALFRED, Shield No.               :    No. 16 Civ. 155 (PKC) (RLM)
20292, and JOHN DOE POLICE OFFICER,                     :
                                                        :
                    Defendants.
-------------------------------------------------------- x

This is an action to recover money damages arising out of the violation of Plaintiff Nancy Nieves's ("Ms. Nieves") rights under the Fourth and Fourteenth Amendments of the United States Constitution.

## JURISDICTION AND VENUE

1.      This action is brought pursuant to 42 U.S.C. §§ 1983 and 1988, and the Fourth and Fourteenth Amendments to the United States Constitution.

2.      The Court's jurisdiction is predicated upon 28 U.S.C. §§ 1331, 1343.

3.      Venue is proper in the Eastern District of New York under 28 U.S.C. § 1391(b) as Plaintiff resides in the District and the claim arose in the District.

## JURY DEMAND

4.      Ms. Nieves respectfully demands a trial by jury of all issues in the matter pursuant to Federal Rule of Civil Procedure ("FRCP") 38.

## PARTIES

5.      Ms. Nieves is a citizen of the City of New York in Kings County in the State of New York.

6.      Defendant City of New York was and is a municipal corporation duly organized

and existing under and by virtue of the laws of the State of New York.

7. Defendant CITY OF NEW YORK maintains the New York City Police Department ("NYPD"), a duly authorized public authority and/or police department, authorized to perform all functions of a police department as per the applicable sections of the aforementioned municipal corporation, the City of New York.

8. That at all times hereinafter mentioned, Defendant Police Officer Alejandro Montalvo, Shield No. 16521, Defendant Police Officer Felicia Alfred, Shield No. 20292, and John Doe Police Officer were duly sworn police officers of the NYPD and were acting under the supervision of said department and according to their official duties.

9. That at all times hereinafter mentioned the Defendants, either personally or through their employees, were acting under color of state law and/or in compliance with the official rules, regulations, laws, statutes, customs, usages and/or practices of the State or City of New York.

10. Each and all of the acts of the Individual Defendants alleged herein were committed by said Defendants while acting within the scope of their employment by Defendant City of New York.

## FACTS

11. Ms. Nieves lives in Brooklyn and is sixty years old.

12. At the time of the incident in question, Ms. Nieves lived in an apartment at 295 Jackson Street ("the Apartment") in Brooklyn with her two sons, Martin Romero and Rene Romero.

13. In the early morning hours of January 9, 2014, while Ms. Nieves was working a night shift, her sons were in the Apartment.

14. Rene Romero had an argument with his then-girlfriend Jessica Bolton.

15. In connection with allegations made about that argument, the police arrested Rene Romero and Martin Romero.

16. Ms. Nieves was at work when all of this transpired.

17. At approximately 9:00 a.m., Ms. Nieves returned to 295 Jackson Street from work.

18. At the moment when Ms. Nieves arrived, Martin Romero was sitting inside a police vehicle outside of 295 Jackson Street.

19. Martin Romero told the police officer driving the vehicle that Ms. Nieves was his mother, and the police officer rolled down his window and called out to Ms. Nieves.

20. The police officer told Ms. Nieves that her sons were being taken to the precinct but provided limited information about what had occurred.

21. The police then drove away to the precinct with Ms. Nieves's sons.

22. Ms. Nieves walked to the door of 295 Jackson Street in order to enter her apartment.

23. As Ms. Nieves approached the door of 295 Jackson Street to go upstairs to the Apartment, Defendant Officer Montalvo, Defendant Officer Alfred and Ms. Bolton exited the building.

24. Ms. Nieves asked Defendants for additional details regarding her sons' arrests.

25. On information and belief, Defendant Officer Montalvo (it may have been Defendant John Doe Officer but, on information and belief, as Montalvo is listed on the City's paperwork as the arresting officer, it was Montalvo) seized Ms. Nieves, roughly twisted her arm behind her back, hurting her in the process, and shoved her up against a fence.

26. Defendant Officer Montalvo told Ms. Nieves that she was under arrest.

27. Ms. Nieves responded that she had not done anything.

28. Another resident of 295 Jackson Street who happened to be outside while all of this occurred called out to Defendant Officer Montalvo that there was no reason to arrest Ms. Nieves because she had not done anything.

29. Defendant Officer Montalvo then released Ms. Nieves and walked away.

30. Defendant Officer Montalvo returned to Ms. Bolton and escorted Ms. Bolton to a police vehicle.

31. Ms. Nieves asked Defendant Officer Alfred questions about what had happened. Among other things, Defendant Alfred told Ms. Nieves that Defendants would seek a search warrant for the Apartment.

32. Defendant John Doe Officer approached Ms. Nieves.  As best she can recollect, Defendant John Doe Officer was of a higher rank than Defendant Officer Montalvo and Defendant Officer Alfred.

33. Defendant Officer Montalvo returned to where Ms. Nieves, Defendant Officer Alfred and Defendant John Doe Officer were standing and remarked that he was of the opinion that Ms. Nieves had wanted to assault them.

34. Ms. Nieves, who is close to sixty years old and who was carrying her pocketbook throughout her conversation with Defendants, did nothing and said nothing that would suggest that she intended anything more than to speak with the officers.

35. Defendant Alejandro Montalvo approached Ms. Nieves, John Doe Officer and Defendant Officer Alfred and suggested that they all go to the precinct together.

36. As Ms. Nieves's sons had just been taken to the precinct, she agreed.

37. Ms. Nieves walked to the police vehicle of her own accord and got into it unhandcuffed.  The drive to the precinct was uneventful.

38. Once at the precinct, Defendants asked Ms. Nieves to sit in a room.

39. Defendants entered the room a short time later and arrested Ms. Nieves for misdemeanor and violation arising from the fabricated allegations that she attempted to assault Defendants and/or Ms. Bolton.

40. Ms. Nieves had done nothing unlawful to justy arrest for any offense.

41. Despite the fact that Ms. Nieves has no criminal history, is a sixty-year old grandmother, and has a long history of working full time for the U.S. government, Defendants made a custodial arrest of Ms. Nieves resulting in her incarceration for roughly forty-eight hours before she was arraigned. Defendants did not issue Ms. Nieves a Desk Appearance Ticket or consider issuing her a DAT pursuant to NYPD Patrol Guide procedures.

42. While Ms. Nieves was incarcerated, Defendants obtained a search warrant and searched the Apartment, finding contraband in Rene Romero's room which they later used as evidence against him in a prosecution.

43. In order to justify Ms. Nieves's incarceration which, Defendants made false statements to employees of the Kings County District Attorney's Office about their interaction with Ms. Nieves stating, among other things, that she repeatedly tried to strike Ms. Bolton, and that when Defendant Officer Alfred tried to grab Ms. Nieves and place her in handcuffs, Ms. Nieves flailed her arms.

44. These and other Defendant statements were not true.

45. Ms. Nieves did not attempt to assault Ms. Bolton in front of various NYPD Officers. Furthermore, Ms. Nieves did not flail her arms when Defendant Officer Alfred tried to grab her and place her in handcuffs. Defendant Officer Alfred never tried to place Ms. Nieves in handcuffs (Ms. Nieves rode to the precinct with the officers unhandcuffed then sat there unhandcuffed for a significant period of time), and it was Defendant Officer Montalvo who roughly grabbed and twisted Ms. Nieves's arm.

46. In reliance upon Defendants' false statements, Ms. Nieves was charged with various offenses.

47. On January 11, 2014, after Ms. Nieves had spent approximately forty-eight hours in police custody, a state court judge arraigned Ms. Nieves and released her.

48. On April 17, 2014, the charges against Ms. Nieves were dismissed.

49. Ms. Nieves suffered damages as a result of Defendants' violation of her constitutional rights, which include, but are not limited to, deprivation of liberty and lost wages as a result of her inability to report to work when she was incarcerated.

50. In addition, Ms. Nieves suffered pain as a result of the arm injury she suffered as a result of John Doe Defendant Officer's excessive force.

51. Shortly after Ms. Nieves was released, she visited a doctor so that s/he could examine her injured arm and swollen hands. The doctor prescribed painkillers for Ms. Nieves.

52. Defendants unconstitutionally deprived Ms. Nieves of her liberty, caused her physical injury, damaged her reputation, caused her to miss work, caused her emotional distress and fear that manifested in physical ailments and more. Ms. Nieves continues to suffer these damages.

53. All of the above occurred as a direct result of the unconstitutional policies, customs or practices of the City of New York, including, without limitation, the inadequate screening, hiring, retaining, training and supervising of its employees, and due to a custom, policy and/or practice of: arresting innocent persons in order to meet "productivity goals," or arrest quotas; arresting individuals for professional advancement, overtime compensation, and/or other objectives outside the ends of justice; and/or manufacturing false evidence against individuals in an individual effort and also in a conspiracy to justify their abuse of authority in falsely arresting those individuals.

54. The aforesaid incident is not an isolated incident. The existence of the aforesaid unconstitutional customs and policies may be inferred from repeated occurrences of similar wrongful conduct as documented in civil rights actions filed in the United States District Courts in the Eastern and Southern Districts of New York as well as in New York State courts. As a result, Defendant City of New York is aware (from said lawsuits as well as notices of claims and complaints filed with the NYPD's Internal Affairs Bureau and the CCRB) that many NYPD officers, including the Individual Defendants, arrest individual persons in order to meet productivity goals and arrest quotas; arrest individuals for professional advancement, overtime compensation and/or other objectives outside the ends of justice; and/or falsely arrest individuals and engage in a practice of falsification of evidence in an attempt to justify the false arrest.

55. The Honorable Jack B. Weinstein, United States District Judge for the Eastern District of New York, has written that

> [i]nformal inquiry by the [C]ourt and among judges of this [C]ourt, as well as knowledge of cases in other federal and state courts, has revealed anecdotal evidence of repeated, widespread falsification by arresting police officers of the [NYPD] . . . [T]here is some evidence of an attitude among officers that is sufficiently widespread to constitute a custom or policy by the [C]ity approving illegal conduct of the kind now charged.

Colon v. City of N.Y., No. 09 Civ. 8, No. 09 Civ. 9 (JBW), 2009 WL 4263363, at *2 (E.D.N.Y. Nov. 25, 2009).

56. Former Deputy Commissioner Paul J. Browne, as reported in the press on January 20, 2006, stated that NYPD commanders are permitted to set "productivity goals," permitting an inference of such a custom or policy encouraging deprivations of individuals' constitutional rights in cases such as this one.

57. Defendant City of New York is thus aware that its improper training and customs and policies have often resulted in a deprivation of individuals' constitutional rights. Despite

7

such notice, Defendant City of New York has failed to take corrective action. This failure caused Individual Defendants in this case to violate Ms. Nieves's constitutional rights.

58. Moreover, on information and belief, Defendant City of New York was aware, prior to the incident, that the Individual Defendants lacked the objectivity, temperament, maturity, discretion and disposition to be employed as police officers. Despite such notice, Defendant City of New York has retained these officers, and failed to adequately train and supervise them.

59. All of the aforementioned acts of Defendants, their agents, servants and employees were carried out under color of state law.

60. All of the aforementioned acts deprived Ms. Nieves of the rights, privileges and immunities guaranteed to citizens of the United States by the Fourth and Fourteenth Amendments to the United States Constitution, and in violation of 42 U.S.C. § 1983.

61. The acts complained of were carried out by the aforementioned Individual Defendants in their capacities as police officers, with the entire actual and/or apparent authority attendant thereto.

62. The acts complained of were carried out by the aforementioned Individual Defendants in their capacities as police officers, pursuant to the customs, usages, practices, procedures and the rules of the Defendant City of New York and the NYPD, all under the supervision of ranking officers of said department.

63. Defendants, collectively and individually, while acting under color of state law, engaged in conduct that constituted a custom, usage, practice, procedure or rule of the respective municipality/authority, which is forbidden by the United States Constitution.

64. As a result of the foregoing, Ms. Nieves is entitled to compensatory and punitive damages in an amount to be fixed by a jury, plus reasonable attorneys' fees, costs and disbursements of this action.

## FIRST CLAIM
## 42 U.S.C. § 1983

65. Ms. Nieves repeats and re-alleges each of the preceding allegations contained in this Complaint with the same force and effect as if fully set forth herein.

66. Defendants, by their conduct toward Ms. Nieves alleged herein, violated Ms. Nieves's rights guaranteed by 42 U.S.C. § 1983 and the Fourth and Fourteenth Amendments to the Constitution of the United States.

67. Defendants' unlawful actions, which were committed under color of state law, were done willfully, knowingly with malice and with the specific intent to deprive Ms. Nieves of her constitutional rights.

68. As a direct and proximate result of Defendants' unlawful conduct, Ms. Nieves sustained the damages hereinbefore alleged.

## SECOND CLAIM
## FALSE ARREST

69. Ms. Nieves repeats and re-alleges each of the preceding allegations contained in this Complaint with the same force and effect as if fully set forth herein.

70. Defendants violated the Fourth and Fourteenth Amendments because they arrested and/or detained Ms. Nieves without probable cause.

71. Defendants' unlawful actions, which were committed under color of state law, were done willfully, knowingly, with malice and with the specific intent to deprive Ms. Nieves of her constitutional rights.

72. As a direct and proximate result of Defendants' unlawful conduct, Ms. Nieves sustained the damages hereinbefore alleged.

## THIRD CLAIM
## EXCESSIVE FORCE

73. Ms. Nieves repeats and re-alleges each of the preceding allegations contained in this Complaint with the same force and effect as if fully set forth herein.

74. The level of force employed by John Doe Defendant Officer was excessive, objectively unreasonable and otherwise in violation of Ms. Nieves's Fourth Amendment and Fourteenth Amendment rights.

75. As a direct and proximate result of Defendants' unlawful conduct, Ms. Nieves was subjected to excessive force and sustained the injuries hereinbefore alleged.

## FOURTH CLAIM
## FAILURE TO INTERVENE

76. Ms. Nieves repeats and re-alleges each of the preceding allegations contained in this Complaint with the same force and effect as if fully set forth herein.

77. The Individual Defendants actively participated in the aforementioned unlawful conduct and observed such conduct, had an opportunity to prevent such conduct, had a duty to intervene and prevent such conduct and failed to intervene.

78. Accordingly, the Individual Defendants who failed to intervene violated the Fourth and Fourteenth Amendments of the United States Constitution.

79. Individual Defendants' unlawful actions, which were committed under color of state law, were done willfully, knowingly, with malice and with the specific intent to deprive Ms. Nieves of her constitutional rights.

80. As a direct and proximate result of Defendants' unlawful conduct, Ms. Nieves sustained the damages hereinbefore alleged.

## FIFTH CLAIM
## MONELL

81.     Ms. Nieves repeats and re-alleges each of the preceding allegations contained in this Complaint with the same force and effect as if fully set forth herein.

82.     Defendants, collectively and individually, while acting under color of state law, engaged in conduct that constituted a custom, usage, practice, procedure or rule of the respective municipality/authority, which is forbidden by the United States Constitution.

83.     The aforementioned customs, policies, usages, practices, procedures and rules of Defendant City of New York and the NYPD included, but were not limited to, the inadequate screening, hiring, retaining, training and supervising of its employees that was the moving force behind the violation of Ms. Nieves's rights as described herein.  As a result of the failure of the Defendant City of New York to properly recruit, screen, train, discipline and supervise its officers, including the Individual Defendants, Defendant City of New York has tacitly authorized, ratified and has been deliberately indifferent to, the acts and conduct complained of herein.

84.     The aforementioned customs, policies, usages, practices, procedures and rules of Defendant City of New York and the NYPD included, but were not limited to: arresting innocent persons in order to meet "productivity goals," or arrest quotas; arresting individuals for professional advancement, overtime compensation, and/or other objectives outside the ends of justice; and/or manufacturing false evidence against individuals in an individual effort and also in a conspiracy to justify their abuse of authority in falsely arresting, unlawfully stopping and maliciously prosecuting those individuals.

85.     The foregoing customs, policies, usages, practices, procedures and rules of the Defendant City of New York and the NYPD constituted deliberate indifference to Ms. Nieves's safety, well-being and constitutional rights.

86. The foregoing customs, polices, usages, practices, procedures and rules of Defendant City of New York and the NYPD were the direct and proximate cause of the constitutional violations suffered by Ms. Nieves as described herein.

**PRAYER FOR RELIEF WHEREFORE**, Ms. Nieves respectfully request the following relief:

A. An order entering judgment for Ms. Nieves against Defendants on each of their claims for relief;

B. Awards to Ms. Nieves for compensatory damages against all Defendants, jointly and severally, for their violation of Ms. Nieves's Fourth and Fourteenth Amendment rights, the amount to be determined at jury trial, which Ms. Nieves respectfully demands pursuant to FRCP 38;

C. Awards to Ms. Nieves of punitive damages against Defendants on the basis of their conscious wrongdoing and callous indifference to Ms. Nieves's constitutional rights and welfare, the amount to be determined at jury trial, which Ms. Nieves respectfully demands pursuant to FRCP 38;

D. Awards to Ms. Nieves of the costs of this action, including reasonable attorneys' fees;

E. Such further relief as this Court deems just and proper.

DATED:	June 6, 2016
	New York, New York

	/s
	Ryan Lozar  (RL0229)
	305 Broadway, 10th Floor
	New York, New York 10007
	(310) 867-1562

	*Attorney for Plaintiff*